IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **JEROME SIROTE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | CV-10-S-2698-NE |
| **BBVA COMPASS BANK, AMY L. SHEHAN,** | ) | |
| **LISA D. WILLIAMS,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages brought by the Plaintiff, JEROME SIROTE, an individual consumer, against Defendants, BBVA COMPASS BANK, AMY L. SHEHAN, and LISA D. WILLIAMS, for violations of the Real Estate Settlement Procedures Act, 12 USC Section 2605, (RESPA), Truth in Lending Act, 15 U.S.C. Section 1601 *et seq* (TILA) and fraud under Alabama Code § 6-5-101, breach of fiduciary duty and breach of contract.

2. JEROME SIROTE further reserves the right to amend his pleadings pursuant to the Federal Rules of Civil Procedure.

### II. JURISDICTION

3. Jurisdiction of the Court arises pursuant to state and federal law. The jurisdiction of this court is invoked pursuant to the Truth in Lending Act, 15 U.S.C. Section 1640(e), the federal Real Estate Settlement procedures Act of 1974, as amended, 12 U.S.C. 2601 *et seq.* and under 28 U.S.C. §1331 and 1337. Venue in this Court is proper in that the Defendant, Compass Bank transacts business in Madison County and Limestone County, Alabama, and the individual Defendants reside in Madison County, Alabama and the conduct complained of occurred in Madison and Limestone County, Alabama. Jurisdiction for the pendent claims is authorized by Fed. R. Civ. P. 18(a) and pursuant to 28 U.S.C. Section 1367.

### III. PARTIES

4. Plaintiff, JEROME SIROTE, is a natural person residing in Huntsville, Madison County, Alabama.

5. Defendants AMY L. SHEHAN, LISA D. WILLIAMS are individuals employed by the Defendant BBVA COMPASS BANK in North Alabama and BBVA COMPASS BANK is a bank and loan servicer as defined in 12 USC Section 2601 doing business in North Alabama.

## IV. CAUSES OF ACTION

### COUNTS 1 and 2 BREACH OF CONTRACT AND FIDUCIARY DUTY

6. On March 21, 2003, Plaintiff, JEROME SIROTE'S signature was forged on a note and Deed of Trust on his principal residence with BBVA COMPASS BANK and again it was forged on A Modification of Deed of Trust on July 19, 2006. Defendant, LISA D. WILLIAMS, notarized the original Deed of Trust (attached hereto as Exhibit A) and Defendant, AMY L. SHEHAN, notarized the Modification (attached hereto as Exhibit B) dated July 19, 2006 despite the fact that JEROME SIROTE did not appear before either notary and did not sign either document. The actions by the individual Defendants were done within the line and scope of their duties pursuant to their employment with BBVA Compass Bank. The signature on both documents does not even resemble JEROME SIROTE'S signature. The Defendant, BBVA Compass Bank has the JEROME SIROTE'S signature on file and failed in its fiduciary duty to JEROME SIROTE to ascertain that his signature was authentic prior to filing their lien.

7. JEROME SIROTE did not discover the lien had been filed on his property using forged documents until 2010. In May 2010 JEROME SIROTE paid off the forged loan and Deed of Trust in accordance with the forged documents in order to sell his farm in Giles County, Tennessee.

8. Defendant, BBVA COMPASS BANK, filed the forged Deeds of Trust in Giles County, Tennessee placing a lien upon his home. JEROME SIROTE was required to pay a principal balance of $92,028.76, interest of $11,131.73, and late charges of $1,040.78 upon the sale of his home on May 14, 2010 on a loan that he had no knowledge of and did not make.

Exhibit "A" and Exhibit "B" were not received by JEROME SIROTE at his residence in Giles County, Tennessee until 2010.

9. The alleged debt of JEROME SIROTE, claimed in Exhibit "A" was a consumer debt secured by his personal residence

10. Beginning January 15, 1990 JEROME SIROTE had a State of Alabama Highway Bond deposited with BBVA Compass Bank which matured and purportedly was transferred to Bond 311-9300-1 on January 19, 1995. The funds in the amount of $1,767,178.30 deposited with Defendant, BBVA Compass Bank, were either lost, misappropriated or otherwise taken. The funds belonging to Jerome Sirote were held by BBVA Compass Bank in a fiduciary capacity and are contractually due and owing Jerome Sirote.

11. As a result of the acts alleged above JEROME SIROTE suffered actual damages, JEROME SIROTE suffered headaches, embarrassment and was forced to sell his property. He suffered inconvenience, was required to spend hours trying to unravel the conspiracy and his credit was damaged.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, JEROME SIROTE requests that judgment be entered against the Defendants for the following;

A. Actual damages;
B. Punitive damages;
C. Costs and reasonable attorney's fees; and
D. For such other and further relief as the Court may deem just and proper.

## COUNT THREE
## TRUTH IN LENDING

12. JEROME SIROTE'S right to relief arises from the failure of the Defendant, BBVA COMPASS BANK, to make required disclosures to him for loans fraudulently made in his name on the above named Deeds of Trust and other loans. JEROME SIROTE was required to pay interest, penalties and principal on loans that he did not authorize or sign for. The Defendant made no disclosures to the Jerome Sirote on any of these loans or extensions of credit which were the result of the Defendants' intentionally or negligently failing to detect the forgery of his signature on the Deed of Trust and other loan documents' misrepresentation and failure to disclose material facts.

13. Defendant, BBVA COMPASS BANK failed to give Jerome Sirote any timely disclosure of the
terms of the loans in accordance with 15 U.S.C. 2601 and Federal Reserve Board Reg. Z, 12 C.F.R. Section 226, promulgated pursuant thereto.

WHEREFORE, Plaintiff, JEROME SIROTE, respectfully prays that this Court: Award damages to be established at trial pursuant to 15 U.S.C. Section 1640(a)(1); Award statutory damages in the amount of twice the finance charges not to exceed $1,000 in accordance with 15 U.S.C. Section 1640(a)(2); Award JEROME SIROTE costs and reasonable attorneys fees in accordance with 15 U.S.C. Section 1640;

## COUNT FOUR
## REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)

14. The Defendant, BBVA COMPASS BANK was mailed a letter on or about December 10, 2009, instructing the Defendant, BBVA COMPASS BANK to deliver copies of all loan documents and accounts to Ben Cumbie and attorney, R. Wayne Wolfe, which qualifies as a

written request from the borrower (or an agent for the borrower) for information relating to the servicing of a loan in accordance with 12 USC 2605(e).

15. Said letter, was a qualified written request that enabled the servicer BBVA COMPASS BANK to identify, the name and account of the borrower in accordance with 12 USC 2605(e) because the letter was a response to a claim on his account and requested an accounting.

16. The letter provided sufficient detail to BBVA COMPASS BANK regarding information sought by the JEROME SIROTE by stating that he wanted copies of all loan documents, deeds of trust and all account statements and an accounting of any arrearage.

17. Defendant, BBVA COMPASS BANK, failed to provide a written response within 20 days and failed to make appropriate corrections in the account of JEROME SIROTE, conduct an investigation, or provide the borrower, (the Plaintiff-JEROME SIROTE) with an explanation or clarification that included a statement of the reasons the account claimed was correct as determined by BBVA COMPASS BANK or the name and telephone number of an individual who could provide assistance to the borrower within 60 days as required by 12 USC 2605(e)(2).

18. In accordance with 12 USC 2605(f) Defendant, BBVA COMPASS BANK is liable to the JEROME SIROTE for any actual damages as a result of the failure and any additional damages in an amount not to exceed $1,000 and any attorney's fees incurred in connection with this action.

## COUNT FIVE
## FRAUD

19. JEROME SIROTE'S right to relief arises out of his payment of a Deed of Trust to the Defendants and the Defendants' intentionally or negligently failing to identify the signature on the Deed of Trust as a forgery and misrepresentation and failure to disclose material facts.

20. Defendant AMY L. SHEHAN misrepresented material facts to JEROME SIROTE by falsely swearing that he had signed the forged Deed of Trust. At all times the Defendant AMY L. SHEHAN was an employee of Defendant, BBVA COMPASS BANK and was acting within the scope of her employment at said Bank.

21. Despite the knowledge that JEROME SIROTE had not signed and had no knowledge of the forged Deed of Trust, BBVA Compass Bank by and through its employees conspired to deny him knowledge of said forged instrument.

22. JEROME SIROTE had securities or bonds and deposits with the Defendant, BBVA Compass Bank, from the year 1985 until 2010. The Bank either willfully, recklessly, or negligently, did not send periodic monthly statements to his home address and provided annual statements to him which were false and misleading.

23. As a result of the foregoing JEROME SIROTE suffered mental anguish, emotional distress, inconvenience, and had to take time away from working on his farm and other activities. Defendants are liable to the Plaintiff, JEROME SIROTE for declaratory judgment that Defendants' conduct was either willful, reckless or negligent.

24. In the course of their fiduciary relationship with JEROME SIROTE, the Defendant, BBVA Compass Bank by and through its employee DEBBIE LUTRELL, stated, warranted, represented, promised, guaranteed or failed to disclose to JEROME SIROTE, the following material facts:

    (a) Represented that he had funds unencumbered of $84,527.03 on or about March 28, 2008 in account #0014576800.

    (b) Failed to disclose that these funds were withdrawn without Jerome Sirote's knowledge or his authority on March 28, 2008.

    (c) On November 3, 2005 they took a deposit of a $17,200.53 check from AXA EQUITABLE to Jerome Sirote with his signature forged upon it.

    (d) Represented that he had funds and securities or bonds on deposit on an annual basis from 1990 until 2008.

    (e) Represented that he had funds or bonds as alleged in paragraph 10 hereof.

25. As the foreseeable, direct, and proximate result of defendants' above-referenced false and fraudulent misrepresentations, plaintiff incurred substantial attorneys fees and was damaged in an amount to be specified later herein.

26. The foregoing misrepresentations of material facts were made willfully to deceive, or recklessly without knowledge, and acted upon by the Plaintiff, so as to constitute fraud under Alabama Code, Section 6-5-101 (1975).

## COUNT EIGHT
## DECEIT

27. The foregoing misrepresentations were willful misrepresentations of material facts made to induce JEROME SIROTE to act, and upon which JEROME SIROTE acted to his injury, or fraudulent or reckless misrepresentations of material facts, so as to constitute deceit and fraudulent deceit under Alabama Code, Section 6-5-103 and Section 6-5-104 (1975).

## COUNT NINE
## FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

28. The foregoing misrepresentations were willful misrepresentations of material facts, or a willful omission to state material facts necessary in order to make the statements made, not misleading. These misrepresentations or willful omissions were made to induce JEROME

SIROTE to act, and upon which JEROME SIROTE acted to his injury by paying Defendants on forged documents. The Defendants engaged in fraudulent or reckless misrepresentations of material facts, so as to constitute deceit and fraud in the collection of a purported debt.

29. As the foreseeable, direct and proximate result of defendants' foregoing fraudulent representations, or fraud and deceit, JEROME SIROTE was damaged in an amount to be determined at trial.

30. Defendants' foregoing misrepresentations were either made negligently, willfully, wantonly or intentionally with knowledge of their untruth.

31. Defendants failed to disclose and fraudulently or recklessly concealed the fact that Defendants, AMY L. SHEHAN and LISA D. WILLIAMS and the Defendant, BBVA COMPASS BANK had no intention of conducting themselves with the high degree of probity and honesty required of an officer, director, or employee of a Mortgage lender, or mortgage servicing corporation, by failing to properly investigate the forgeries and recording the forged Deeds of Trust against JEROME SIROTE'S farm and failing to specifically disclose Defendants' knowledge of the existence of the forged documents and payments received by them and made to them that had been credited to the Plaintiff's account, or to any other account, and other material facts as herein enumerated or as may be discovered and added by amendment to this complaint.

32. All these misstatements and omissions were an essential part of Defendants' scheme to defraud JEROME SIROTE.

33. Had disclosure of these facts been made, JEROME SIROTE would not have been forced to hire an attorney to investigate his accounts and to file this Complaint.

34. The failures to disclose and misrepresentations of material facts were either intentional or negligent. Such actions also constituted a breach of fiduciary duty and constitute an untruth or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading to JEROME SIROTE. Defendants failed to disclose plainly and intelligibly all account information, purported liens, and other financial interests which Defendants, AMY L. SHEHAN, LISA D. WILLIAMS, BBVA COMPASS BANK had knowledge of, or which they had a duty to disclose to JEROME SIROTE.

35. That the above-mentioned representations of Defendants, AMY L. SHEHAN and LISA D. WILLIAMS were made with BBVA COMPASS BANK'S knowledge and assent and were false or were not fully and adequately disclosed. That the Bank had employees that did not witness JEROME SIROTE sign a Deed of Trust swear they witnessed him sign the Deed of Trust.

36. That when Defendants, AMY L. SHEHAN, LISA D. WILLIAMS, made the statements referred to in Paragraphs 6 through 35, Defendants either knew they were false, had

no intention of taking such action, had knowledge that there was no intent to take such action or made them recklessly without any knowledge of the truth. That Defendants and their agents made the statements referred to in Paragraphs 6 through 35, with reckless disregard for the truth and the intent of requiring JEROME SIROTE to pay them monies that were not due and owing them. That the Defendants harassed JEROME SIROTE and submitted false and deceptive claims for money that he did not owe them

37. Defendants, AMY L. SHEHAN and LISA D. WILLIAMS, willfully made the false representations referred herein, intentionally concealed from JEROME SIROTE information referred to in Paragraphs 6 through 35 for the purpose of injuring JEROME SIROTE. Such conduct of Defendants was intentional, willful, wanton and malicious, thereby justifying the imposition of exemplary damages.

38. JEROME SIROTE suffered injury in that at the time of Defendants' statements referred to in Paragraphs 6 through 35, and at all subsequent times continuing to the present, JEROME SIROTE had not signed any Deed of Trust by the Defendant AMY L. SHEHAN

39. That Defendants, AMY L. SHEHAN, LISA D. WILLIAMS and BBVA COMPASS BANK, had knowledge of these facts or should have had knowledge of these facts by due diligence and reasonable investigation and intentionally failed to disclose these facts to JEROME SIROTE to the detriment of JEROME SIROTE and for the benefit of all the Defendants.

40. That Defendants, AMY L. SHEHAN and LISA D. WILLIAMS, had knowledge of or should have had knowledge as a reasonable prudent person and/or in their capacity as notary publics that Jerome Sirote did not sign the forged documents.

## V. DAMAGES

41. As herein above alleged and by virtue of their breaches of contract and fiduciary duty, truth in lending violations, RESPA violations, Fair Debt Collection violations, and fraudulent acts, deceitful acts, their negligence, intentional and reckless or willful and wanton conduct, the Defendants are liable for actual and punitive damages.

The defendants are further liable for JEROME SIROTE'S inconvenience, discomfort, humiliation and annoyance, emotional distress, disappointment, pain and suffering, compensatory and punitive damages.

45. JEROME SIROTE shows that he has been required to employ the services of the undersigned law firm to bring this action. JEROME SIROTE alleges that by virtue of Defendants' conduct as alleged above, an award of attorneys fees to JEROME SIROTE in accordance with applicable acts would be required and/or equitable in the circumstances for all legal expenses incurred in the prosecution of this action in the trial court and, if necessary for all legal expense incurred in the Circuit Court of Appeals and the Supreme Court.

46. JEROME SIROTE hereby serves notice of its express reservation to amend these pleadings at a later date to further detail the extent and nature of the damages sustained as the result of Defendants above described actions.

WHEREFORE, JEROME SIROTE requests that Defendants be cited to appear, that upon final hearing of this cause that JEROME SIROTE have Judgment against Defendants, AMY L. SHEHAN, LISA D. WILLIAMS and BBVA COMPASS BANK for actual damages, which sum exceeds the minimum jurisdictional limits of the Court, and for exemplary damages, together with interest at the legal rate upon the damages and post-judgment interest at the rate allowable by law upon both actual, punitive and exemplary damages until the Judgment is paid, costs of suit, and that JEROME SIROTE be granted such other and further relief to which JEROME SIROTE may be justly entitled.

Respectfully submitted,

_____  
S. MITCHELL HOWIE  
107 North Side Square  
Huntsville, Alabama 35801  
Attorney for Plaintiff  
ASB-7809-E595

_____  
MITCHELL J. HOWIE  
107 North Side Square  
Huntsville, Alabama 35801  
Attorney for Plaintiff

Plaintiff hereby demands a trial by jury.

_____  
S. MITCHELL HOWIE

_____  
MITCHELL J. HOWIE

THIS DOCUMENT WAS PREPARED BY AND WHEN RECORDED MAIL TO:
COMPASS BANK
P O BOX 10566
BIRMINGHAM AL 35296

MAP AND PARCEL  MAP 165, PARCEL 2.00

MAXIMUM PRINCIPAL INDEBTEDNESS FOR TENNESSEE RECORDING TAX PURPOSES IS $ 100,000.00

# DEED OF TRUST

| BORROWER | GRANTOR |
|---|---|
| JEROME  SIROTE<br>JEAN  SIROTE | JEROME  SIROTE<br>JEAN  SIROTE, HUSBAND AND WIFE |
| **ADDRESS**<br>9396 BETHEL ROAD<br>PROSPECT, TN  38477<br>TELEPHONE NO.           IDENTIFICATION NO. | **ADDRESS**<br>9396 BETHEL ROAD<br>PROSPECT, TN  38477<br>TELEPHONE NO.           IDENTIFICATION NO. |

TRUSTEE:
A RESIDENT OF _____ COUNTY, TENNESSEE.

In consideration of the loan or other credit accommodation hereinafter specified and any future advances or future Obligations, as defined herein, which may hereafter be advanced or incurred and the trust hereinafter mentioned and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor hereby irrevocably bargains, sells, transfers, grants, conveys, pledges, hypothecates, and assigns to Trustee, his successors and assigns, in trust, for   COMPASS BANK , 114 GOVERNORS DRIVE, HUNTSVILLE, AL, 35801
("Lender"), the beneficiary under this Deed of Trust, with power of sale and right of entry and possession all of Grantor's present and future estate, right, title and interest in and to the real property described in Schedule A which is attached to this Deed of Trust and incorporated herein by this reference, together with all present and future improvements and fixtures; all tangible personal property, including, without limitation, all machinery, equipment, building materials, and goods of every nature (excluding household goods) now or hereafter located on or used in connection with the real property, whether or not affixed to the land; all privileges, hereditaments, and appurtenances including all development rights associated with the Property (hereafter defined), whether previously or subsequently transferred to the real property from other real property or now or hereafter susceptible of transfer from this real property to other real property; all leases, licenses and other agreements; all rents, issues and profits; all water, well, ditch, reservoir and mineral rights and stocks pertaining to the real property (collectively, the real property and the foregoing "Property"); to have and to hold the Property and the rights hereby granted for the use and benefit of Trustee, his successors and assigns, in fee simple, until payment in full of all Obligations secured hereby.

Moreover, in further consideration, Grantor does, for Grantor and Grantor's heirs, representatives, successors, and assigns, hereby expressly warrant, covenant, and agree with Lender and Trustee and their successors and assigns as follows:
**1. OBLIGATIONS.** This Deed of Trust shall secure the payment and performance of all present and future indebtedness, liabilities, obligations and covenants of Borrower or Grantor (cumulatively "Obligations") to Lender pursuant to:
(a) this Deed of Trust and the following promissory notes and other agreements, (the terms of which are hereby incorporated by reference).

| INTEREST RATE | PRINCIPAL AMOUNT/ CREDIT LIMIT | FUNDING/ AGREEMENT DATE | MATURITY DATE | CUSTOMER NUMBER | LOAN NUMBER |
|---|---|---|---|---|---|
| VARIABLE | $100,000.00 | 03/21/03 | 03/20/08 | | |

(b) ☐ all other presently existing or future written evidences of indebtedness, obligations, agreements, instruments, guaranties or otherwise with Lender (whether incurred for the same or different purposes than the foregoing);
(c) future advances, whether obligatory or optional, to the same extent as if made contemporaneously with the execution of this Deed of Trust, made or extended to or on behalf of Grantor or Borrower. Grantor agrees that if one of the Obligations is a line of credit, the lien of this Deed of Trust shall continue until payment in full of all debt due under the line notwithstanding the fact that from time to time (but before termination of the line) no balance may be outstanding.  At no time shall the lien of this Deed of Trust, not including sums advanced to protect the security of this Deed of Trust, exceed $100,000.00 ; and
(d) all amendments, extensions, renewals, modifications, replacements or substitutions to any of the foregoing.
As used in this Paragraph 1, the terms Grantor and Borrower shall include and also mean any Grantor or Borrower if more than one.
**2. REPRESENTATIONS, WARRANTIES AND COVENANTS.** Grantor represents, warrants and covenants to Lender that:
(a) Grantor has fee simple marketable title to the Property and shall maintain the Property free of all liens, security interests, encumbrances and claims except for this Deed of Trust and those described in Schedule B, which is attached to this Deed of Trust and incorporated herein by reference, which Grantor agrees to pay and perform in a timely manner;
(b) Grantor is in compliance in all respects with all applicable federal, state and local laws and regulations, including, without limitation, those relating to "Hazardous Materials," as defined herein, and other environmental matters (the "Environmental Laws"), and neither the federal government nor the state where the Property is located nor any other governmental or quasi governmental entity has filed a lien on the Property, nor are there any governmental, judicial or administrative actions with respect to environmental matters pending, or to the best of the Grantor's knowledge, threatened, which involve the Property. Neither Grantor nor, to the best of Grantor's knowledge, any other party has used, generated, released, discharged, stored, or disposed of any Hazardous Materials as defined herein, in connection with the Property or transported any Hazardous Materials to or from the Property. Grantor shall not commit or permit such actions to be taken in the future. The term "Hazardous Materials" shall mean any substance, material, or waste which is or becomes regulated by any governmental authority including, but not limited to: (i) petroleum; (ii) friable or nonfriable asbestos; (iii) polychlorinated biphenyls; (iv) those substances, materials or wastes designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act or listed pursuant to Section 307 of the Clean Water Act or any amendments or replacements to these statutes or any similar state statute; (v) those substances, materials or wastes defined as a "hazardous waste" pursuant to Section 1004 of the Resource Conservation and Recovery Act or any amendments or replacements to that statute or any similar state statute; and (vi) those substances, materials or wastes defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act, or any amendments or replacements to that statute or any other similar state or federal statute, rule, regulation or ordinance now or hereafter in effect. Grantor shall not lease or permit the sublease of the Property to a tenant or subtenant whose operations may result in contamination of the Property with Hazardous Materials or toxic substances;

LPTN511© John H. Harland Co. (9/29/98) (800) 937-3799                                                      Page 1 of 6 _____

HENRY HENRY UNDERWOOD     036825
PO BOX 458
PULASKI TN 38478
PICK UP

BK DT360 PG  800

(c) All applicable laws and regulations, including, without limitation, the Americans with Disabilities Act, 42 U.S.C. Section 12101 et seq. (and all regulations promulgated thereunder) and all zoning and building laws and regulations relating to the Property by virtue of any federal, state or municipal authority with jurisdiction over the Property, presently are and shall be observed and complied with in all material respects, and all rights, licenses, permits, and certificates of occupancy (including but not limited to zoning variances, special exceptions for nonconforming uses, and final inspection approvals), whether temporary or permanent, which are material to the use and occupancy of the Property, presently are and shall be obtained, preserved and, where necessary, renewed;

(d) Grantor has the right and is duly authorized to execute and perform its Obligations under this Deed of Trust and these actions do not and shall not conflict with the provisions of any statute, regulation, ordinance, rule of law, contract or other agreement which may be binding on Grantor at any time;

(e) No action or proceeding is or shall be pending or threatened which might materially affect the Property; and

(f) Grantor has not violated and shall not violate any statute, regulation, ordinance, rule of law, contract or other agreement (including, but not limited to, those governing Hazardous Materials) which might materially affect the Property or Lender's rights or interest in the Property pursuant to this Deed of Trust.

**3. TRANSFERS OF THE PROPERTY OR BENEFICIAL INTERESTS IN GRANTORS OR BORROWERS.** In the event of a sale, conveyance, lease, contract for deed or transfer to any person of all or any part of the real property described in Schedule A, or any interest therein, or of all or any beneficial interest in Borrower or Grantor (if Borrower or Grantor is not a natural person or persons but is a corporation, limited liability company, partnership, trust, or other legal entity), Lender may, at its option, declare the outstanding principal balance of the Obligations plus accrued interest thereon immediately due and payable. At Lender's request, Grantor or Borrower, as the case may be, shall furnish a complete statement setting forth all of its stockholders, members, or partners, as appropriate, and the extent of their respective ownership interests.

**4. ASSIGNMENT OF RENTS.** In consideration of the Obligations which are secured by this Deed of Trust, Grantor absolutely assigns to Lender all Grantor's estate, right, title, interest, claim and demand now owned or hereafter acquired in all existing and future leases of the Property (including extensions, renewals and subleases), all agreements for use and occupancy of the Property (all such leases and agreements whether written or oral, are hereafter referred to as the "Leases") and all guaranties of lessees' performance under the Leases, together with the immediate and continuing right to collect and receive all of the rents, income, receipts, revenues, issues, profits and other income of any nature now or hereafter due (including any income of any nature coming due during any redemption period) under the Leases or from or arising out of the Property, including minimum rents, additional rents, percentage rents, parking or common area maintenance contributions, tax and insurance contributions, deficiency rents, liquidated damages following default in any Lease, all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by destruction or damage to the Property, all proceeds payable as a result of a lessee's exercise of an option to purchase the Property, all proceeds derived from the termination or rejection of any Lease in a bankruptcy or other insolvency proceeding, and all proceeds from any rights and claims of any kind which Grantor may have against any lessee under the Leases or any occupants of the Property (all of the above are hereafter collectively referred to as the "Rents"). This assignment is subject to the right, power and authority given to the Lender to collect and apply the Rents. This assignment is recorded in accordance with applicable state law; the lien created by this assignment is intended to be specific, perfected, and choate upon the recording of this Deed of Trust, all as provided by applicable state law as amended from time to time. As long as there is no default under the Obligations or this Deed of Trust, Lender grants Grantor a revocable license to collect all Rents from the Leases when due and to use such proceeds in Grantor's business operations. However, Lender may at any time require Grantor to deposit all Rents into an account maintained by Grantor or Lender at Lender's institution. Upon default in the payment of, or in the performance of, any of the Obligations, Lender may at its option take possession of the Property and have, hold, manage, lease and operate the Property on terms and for a period of time that Lender deems proper. Lender may proceed to collect and receive all Rents from the property, and Lender shall have full power to make alterations, renovations, repairs or replacements to the Property as Lender may deem proper. Lender may apply all Rents in Lender's sole discretion to payment of the Obligations or to the payment of the cost of such alterations, renovations, repairs and replacements and any expenses incident to taking and retaining possession of the Property periodically and the management and operation of the Property. Lender may keep the Property properly insured and may discharge any taxes, charges, claims, assessments and other liens which may accrue. The expense and cost of these actions may be paid from the Rents received, and any unpaid amounts shall be added to the principal of the Obligations. These amounts, together with other costs, shall become part of the Obligations secured by this Deed of Trust.

**5. LEASES AND OTHER AGREEMENTS.** Grantor shall not take or fail to take any action which may cause or permit the termination or the withholding of any payment in connection with any Lease pertaining to the Property. In addition, Grantor, without Lender's prior written consent, shall not: (a) collect any monies payable under any Lease more than one month in advance; (b) modify any Lease; (c) assign or allow a lien, security interest or other encumbrance to be placed upon Grantor's rights, title and interest in and to any Lease or the amounts payable thereunder except as specifically set forth herein; or (d) terminate or cancel any Lease except for the nonpayment of any sum or other material breach by the other party thereto. If Grantor receives at any time any written communication asserting a default by Grantor under a Lease or purporting to terminate or cancel any Lease, Grantor shall promptly forward a copy of such communication (and any subsequent communications relating thereto) to Lender. All such Leases and the amounts due to Grantor thereunder are hereby assigned to Lender as additional security for the Obligations.

**6. COLLECTION OF INDEBTEDNESS FROM THIRD PARTY.** Lender shall be entitled to notify or require Grantor to notify any third party (including, but not limited to, lessees, licensees, governmental authorities and insurance companies) to pay Lender any indebtedness or obligation owing to Grantor with respect to the Property (cumulatively "Indebtedness") whether or not a default exists under this Deed of Trust. Grantor shall diligently collect the Indebtedness owing to Grantor from these third parties until the giving of such notification. In the event that Grantor possesses or receives possession of any instruments or other remittances with respect to the Indebtedness following the giving of such notification or if the instruments or other remittances constitute the prepayment or the payment of any insurance or condemnation proceeds, Grantor shall hold such instruments and other remittances in trust for Lender apart from its other property, endorse the instruments and other remittances to Lender, and immediately provide Lender with possession of the instruments and other remittances. Lender shall be entitled, but not required, to collect (by legal proceedings or otherwise), extend the time for payment, compromise, exchange or release any obligor or collateral, or otherwise settle any of the Indebtedness whether or not an Event of Default exists under this Deed of Trust. Lender shall not be liable to Grantor for any action, error, mistake, omission or delay pertaining to the actions described in this paragraph or any damages resulting therefrom. Notwithstanding the foregoing, nothing herein shall cause Lender to be deemed a mortgagee-in-possession.

**7. USE AND MAINTENANCE OF PROPERTY.** Grantor shall take all actions and make any repairs needed to maintain the Property in good condition. Grantor shall not commit or permit any waste to be committed with respect to the Property. Grantor shall use the Property solely in compliance with applicable law and insurance policies. Grantor shall not make any alterations, additions or improvements to the Property without Lender's prior written consent. Without limiting the foregoing, all alterations, additions and improvements made to the Property shall be subject to the beneficial interest belonging to Lender, shall not be removed without Lender's prior written consent, and shall be made at Grantor's sole expense.

**8. LOSS OR DAMAGE.** Grantor shall bear the entire risk of any loss, theft, destruction or damage (cumulatively "Loss or Damage") to the Property or any portion thereof from any cause whatsoever. In the event of any Loss or Damage, Grantor shall, at the option of Lender, repair the affected Property to its previous condition or pay or cause to be paid to Lender the decrease in the fair market value of the affected Property.

**9. INSURANCE.** The Property will be kept insured for its full insurable value (replacement cost) against all hazards including loss or damage caused by flood, earthquake, tornado and fire, theft or other casualty to the extent required by Lender. Grantor may obtain insurance on the Property from such companies as are acceptable to Lender in its sole discretion. The insurance policies shall require the insurance company to provide Lender with at least ___30___ days' written notice before such policies are altered or cancelled in any manner. The insurance policies shall name Lender as a loss payee, or additional insured as Lender may require, and provide that no act or omission of Grantor or any other person shall affect the right of Lender to be paid the insurance proceeds pertaining to the loss or damage of the Property. In the event Grantor fails to acquire or maintain insurance, Lender (after providing notice as may be required by law) may in its discretion procure appropriate insurance coverage upon the Property and the insurance cost shall be an advance payable and bearing interest as described in Paragraph 21 and secured hereby. Grantor shall furnish Lender with evidence of insurance indicating the required coverage. Lender may act as attorney-in-fact for Grantor in making and settling claims under insurance policies, cancelling any policy or endorsing Grantor's name on any draft or negotiable instrument drawn by any insurer. All such insurance policies shall be immediately assigned, pledged and delivered to Lender as further security for the Obligations. In the event of loss, Grantor shall immediately give Lender written notice and Lender is authorized to make proof of loss. Each insurance company is directed to make payments directly to Lender instead of to Lender and Grantor. Lender shall have the right, at its sole option, to apply such monies toward the Obligations or toward the cost of rebuilding and restoring the Property. Any amounts may at Lender's option be applied in the inverse order of the due dates thereof.

**10. ZONING AND PRIVATE COVENANTS.** Grantor shall not initiate or consent to any change in the zoning provisions or private covenants affecting the use of the Property without Lender's prior written consent. If Grantor's use of the Property is or becomes a nonconforming use under any zoning provision, Grantor shall not cause or permit such use to be discontinued or abandoned without the prior written consent of Lender. Grantor will immediately provide Lender with written notice of any proposed changes to the zoning provisions or private covenants affecting the Property.

11. **CONDEMNATION.** Grantor shall immediately provide Lender with written notice of any actual or threatened condemnation or eminent domain proceeding pertaining to the Property. All monies payable to Grantor from such condemnation or taking are hereby assigned to Lender and shall be applied first to the payment of Lender's attorneys' fees, legal expenses and other costs (including appraisal fees) in connection with the condemnation or eminent domain proceedings and then, at the option of Lender, to the payment of the Obligations or the restoration or repair of the Property.

12. **LENDER'S RIGHT TO COMMENCE OR DEFEND LEGAL ACTIONS.** Grantor shall immediately provide Lender with written notice of any actual or threatened action, suit, or other proceeding affecting the Property. Grantor hereby appoints Lender as its attorney-in-fact to commence, intervene in, and defend such actions, suits, or other legal proceedings and to compromise or settle any claim or controversy pertaining thereto. Lender shall not be liable to Grantor for any action, error, mistake, omission or delay pertaining to the actions described in this paragraph or any damages resulting therefrom. Nothing contained herein will prevent Lender from taking the actions described in this paragraph in its own name.

13. **INDEMNIFICATION.** Lender shall not assume or be responsible for the performance of any of Grantor's obligations with respect to the Property under any circumstances. Grantor shall immediately provide Lender with written notice of and indemnify and hold Lender and its shareholders, directors, officers, employees and agents harmless from all claims, damages, liabilities (including attorneys' fees and legal expenses), causes of action, actions, suits and other legal proceedings (cumulatively "Claims") pertaining to the Property (including, but not limited to, those involving Hazardous Materials). Grantor, upon the request of Lender, shall hire legal counsel to defend Lender from such Claims, and pay the attorneys' fees, legal expenses and other costs incurred in connection therewith. In the alternative, Lender shall be entitled to employ its own legal counsel to defend such Claims at Grantor's cost. Grantor's obligation to indemnify Lender under this paragraph shall survive the termination, release or foreclosure of this Deed of Trust.

14. **TAXES AND ASSESSMENTS.** Grantor shall pay all taxes and assessments relating to the Property when due and immediately provide Lender evidence of payment of same. Upon the request of Lender, Grantor shall deposit with Lender each month one-twelfth (1/12) of the estimated annual insurance premium, taxes and assessments pertaining to the Property. So long as there is no default, these amounts shall be applied to the payment of taxes, assessments and insurance as required on the Property. In the event of default, Lender shall have the right, at its sole option, to apply the funds so held to pay any taxes or against the Obligations. Any funds applied may, at Lender's option, be applied in reverse order of the due date thereof.

15. **INSPECTION OF PROPERTY, BOOKS, RECORDS AND REPORTS.** Grantor shall allow Lender or its agents to examine and inspect the Property and examine, inspect and make copies of Grantor's books and records pertaining to the Property from time to time. Grantor shall provide any assistance required by Lender for these purposes. All of the signatures and information contained in Grantor's books and records shall be genuine, true, accurate and complete in all respects. Grantor shall note the existence of Lender's beneficial interest in its books and records pertaining to the Property. Additionally, Grantor shall report, in a form satisfactory to Lender, such information as Lender may request regarding Grantor's financial condition or the Property. The information shall be for such periods, shall reflect Grantor's records at such time, and shall be rendered with such frequency as Lender may designate. All information furnished by Grantor to Lender shall be true, accurate and complete in all respects, and signed by Grantor if Lender requests.

16. **ESTOPPEL CERTIFICATES.** Within ten (10) days after any request by Lender, Grantor shall deliver to Lender, or any intended transferee of Lender's rights with respect to the Obligations, a signed and acknowledged statement specifying (a) the outstanding balance on the Obligations; and (b) whether Grantor possesses any claims, defenses, set-offs or counterclaims with respect to the Obligations and, if so, the nature of such claims, defenses, set-offs or counterclaims. Grantor will be conclusively bound by any representation that Lender may make to the intended transferee with respect to these matters in the event that Grantor fails to provide the requested statement in a timely manner.

17. **EVENTS OF DEFAULT.** An Event of Default shall occur under this Deed of Trust and the Trustee's power shall become operative in the event that Grantor, Borrower or any guarantor of the Obligations:
   (a) fails to pay any Obligation to Lender when due;
   (b) fails to perform any Obligation or breaches any warranty or covenant to Lender contained in this Deed of Trust or any other present or future agreement;
   (c) destroys, loses or damages the Property in any material respect or subjects the Property to seizure, confiscation, or condemnation;
   (d) seeks to revoke, terminate or otherwise limit its liability under any guaranty to Lender;
   (e) has a garnishment, judgment, tax levy, attachment or lien entered or served against Grantor, Borrower, any Guarantor, or any of their Property;
   (f) dies, becomes legally incompetent, is dissolved or terminated, becomes insolvent, makes an assignment for the benefit of creditors, fails to pay debts as they become due, files a petition under the federal bankruptcy laws, has an involuntary petition in bankruptcy filed in which Grantor, Borrower or any guarantor is named, or has property taken under any writ or process of court;
   (g) allows goods to be used, transported or stored on the Property, the possession, transportation, or use of which, is illegal;
   (h) allows any party other than Grantor or Borrower to assume or undertake any Obligation without the written consent of Lender; or
   (i) causes Lender to deem itself insecure due to a significant decline in the value of the Property; or if Lender, in good faith, for any reason, believes that the prospect of payment or performance is impaired.

18. **RIGHTS OF LENDER ON EVENT OF DEFAULT.** Upon the occurrence of an Event of Default under this Deed of Trust, Lender shall be entitled to exercise one or more of the following remedies without notice or demand (except as required by law):
   (a) to declare the Obligations immediately due and payable in full, such acceleration shall be automatic and immediate if the Event of Default is a filing under the Bankruptcy Code;
   (b) to collect the outstanding Obligations with or without resorting to judicial process;
   (c) to require Grantor to deliver and make available to Lender any personal property or Chattels constituting the Property at a place reasonably convenient to Grantor and Lender;
   (d) to enter upon and take possession of the Property without applying for or obtaining the appointment of a receiver and, at Lender's option, to appoint a receiver without bond, without first bringing suit on the Obligations and without otherwise meeting any statutory conditions regarding receivers, it being intended that Lender shall have this contractual right to appoint a receiver;
   (e) to employ a managing agent of the Property and let the same, either in Trustee's own name, in the name of Lender or in the name of Grantor, and receive the rents, incomes, issues and profits of the Property and apply the same, after payment of all necessary charges and expenses, on account of the Obligations;
   (f) to pay any sums in any form or manner deemed expedient by Lender to protect the security of this Deed of Trust or to cure any default other than payment of interest or principal on the Obligations;
   (g) to foreclose this Deed of Trust judicially or nonjudicially. The Trustee hereunder, or his agent or successors, at the request of the Lender, or the representatives or assigns of the Lender, after giving notice of the time and place of sale by publication of such at least three (3) different times in some newspaper published in the county in which the Property is primarily situated, the first of which publications shall be at least twenty (20) days previous to said sale, shall, at the date and time stated in the notice, and at the door of the County Courthouse in said County at which foreclosure sales are customarily held or at the election of Lender at the Property, proceed to sell the Property at public auction for cash (or for credit against the Obligations if the Lender is the highest bidder) or upon such other terms that are satisfactory to Trustee and Lender, and in bar of the equity of redemption and all other rights of redemption, statutory or otherwise (including, without limitation, those rights of redemption contained in Tennessee Code Annotated Section 66-8-101 et seq.), homestead, dower, elective share, rights of appraisement or valuation, and all other rights and exemptions of every kind, all of which are hereby waived. In the event the Trustee cannot determine the person or persons to whom the surplus should be paid or a controversy exists with respect to the surplus, the Trustee may pay the surplus into a court of competent jurisdiction in an interpleader action and all expenses of such action, including legal fees incurred by Lender and Trustee, shall be paid from the surplus or, if the surplus is insufficient, by Grantor. Lender or Lender's designee may purchase the Property at any sale. In the event Lender purchases the Property at the Trustee's sale, to the extent Lender's bid price exceeds the Obligations, Lender shall pay Trustee cash equal to such excess. The Property or any part thereof may be sold in one parcel, or in such parcels, manner or order as Lender in its sole discretion may elect, and one or more exercises of the power herein granted shall not extinguish or exhaust the power unless the entire Property are sold or the Obligations paid in full. Following a Trustee's sale of the Property, Trustee shall deliver to the purchaser a Trustee's Deed conveying the property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's Deed shall be prima facie evidence of the truth of the statements made therein. Grantor further agrees that in case of any sale hereunder, it will at once surrender possession of the Property, and will from that moment become and be the tenant at will of the purchaser, and removable by process as upon a forcible and unlawful detainer suit, hereby agreeing to pay such purchaser the reasonable rental value of the Property after such sale plus all expenses, including legal fees, incurred by the purchaser. Neither the Lender or the Trustee shall be required to give any notice of the foreclosure sale to the Grantor.
   (h) Upon the institution of foreclosure, Trustee shall, upon application therefor, without notice, be entitled to have a receiver appointed to take possession of the Property, and Trustee or Lender shall be entitled to all of the rents, issues and profits arising therefrom during the pendency of any such foreclosure proceedings.

(i) to set-off Grantor's Obligations against any amounts owed Grantor by Lender including, but not limited to, monies, instruments, and deposit accounts maintained with Lender or any currently existing or future affiliate of Lender; and
(j) to exercise all other rights available to Lender under any other written agreement or applicable law.

Lender's rights are cumulative and may be exercised together, separately, and in any order. In the event that Lender institutes an action seeking the recovery of any of the Property by way of a prejudgment remedy in an action against Grantor, Grantor waives the posting of any bond which might otherwise be required.

**19. SECURITY INTEREST UNDER THE UNIFORM COMMERCIAL CODE.** This Deed of Trust shall be considered a financing statement and a fixture filing pursuant to the provisions of the Uniform Commercial Code (as adopted in the state where the Property is located) covering fixtures, chattels, and articles of personal property now owned or hereafter attached to or to be used in connection with the Property together with any and all replacements thereof and additions thereto (the "Chattels"), and Grantor hereby grants Lender a security interest in such Chattels. The debtor is the Grantor described above. The secured party is the Lender described above. Upon demand, Grantor shall make, execute and deliver such security agreements (as such term is defined in said Uniform Commercial Code) as Lender at any time may deem necessary or proper or required to grant to Lender a perfected security interest in the Chattels, and upon Grantor's failure to do so, Lender is authorized to sign any such agreement as the agent of Grantor. Grantor hereby authorizes Lender to file financing statements (as such term is defined in said Uniform Commercial Code) with respect to the Chattels, at any time, without the signature of Grantor. Grantor will, however, at any time upon request of Lender, sign such financing statements. Grantor will pay all filing fees for the filing of such financing statements and for the refiling thereof at the times required, in the opinion of Lender, by said Uniform Commercial Code. If the lien of this Deed of Trust is subject to any security agreement covering the Chattels, then in the event of any default under this Deed of Trust, all the right, title and interest of Grantor in and to any and all of the Chattels is hereby assigned to Lender, together with the benefit of any deposits or payments now or hereafter made thereof by Grantor or the predecessors or successors in title of Grantor in the Property.

**20. REIMBURSEMENT OF AMOUNTS EXPENDED BY LENDER.** Lender, at Lender's option, may expend funds (including attorneys' fees and legal expenses) to perform any act required to be taken by Grantor or to exercise any right or remedy of Lender under this Deed of Trust. Upon demand, Grantor shall immediately reimburse Lender for all such amounts expended by Lender together with interest thereon at the lower of the highest rate described in any Obligation or the highest rate allowed by law from the date of payment until the date of reimbursement. These sums shall be included in the definition of Obligations herein and shall be secured by the beneficial interest granted herein. If the Obligations are paid after the beginning of publication of notice of sale, as herein provided, or in the event Lender shall, at its sole option, permit Grantor to pay any part of the Obligations after the beginning of publication of notice of sale, as herein provided, then, Grantor shall pay on demand all expenses incurred by the Trustee and Lender in connection with said publication, including reasonable attorneys' fees to the attorneys for the Trustee and for the Lender, and a reasonable fee to the Trustee, and this Deed of Trust shall be security for all such expenses and fees.

**21. CONDOMINIUM COVENANTS.** If the Property comprises a Unit in and together with an undivided interest in the common elements of a condominium, Grantor shall: (a) promptly pay, when due, all assessments imposed by the Owner Association or other governing body of the condominium project pursuant to the provisions of the declaration, by-laws, code of regulations or other constituent document thereof; and (b) except with Lender's prior written consent, not partition or subdivision the Property or consent to (i) the abandonment or termination of the condominium project; (ii) any material amendment to the declarations, be-laws, code ore regulations or other constituent doceument of the condominium project including, but not limited to, any amendment which would change the percentage interest of the unit owners in the condominium project; or (iii) any proposal to terminate professional management and assume self-management of the condominium project. If the condominium project maintains a "master" or "blanket" policy on condominium projects which provides insurance coverage against hazards included within the term "extended coverage" and such hazards as Lender may require, and in such amount and for such amount and for such period as Lender may require, then the provisions herein regarding the application of hazard insurance proceeds shall be superseded by any provision of the declarations, by-laws, code of regulations or constituent document of the condominium project or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions herein.

**22. APPLICATION OF PAYMENTS.** All payments made by or on behalf of Grantor may be applied against the amounts paid by Lender (including attorneys' fees and legal expenses) in connection with the exercise of its rights or remedies described in this Deed of Trust and then to the payment of the remaining Obligations in whatever order Lender chooses.

**23. POWER OF ATTORNEY.** Grantor hereby appoints Lender as its attorney-in-fact to endorse Grantor's name on all instruments and other documents pertaining to the Obligations or Deed of Trust. In addition, Lender shall be entitled, but not required, to perform any action or execute any document required to be taken or executed by Grantor under this Deed of Trust. Lender's performance of such action or execution of such documents shall not relieve Grantor from any Obligation or cure any default under this Deed of Trust. All powers of attorney described in this Deed of Trust are coupled with an interest and are irrevocable.

**24. SUBROGATION OF LENDER.** Lender shall be subrogated to the rights of the holder of any previous lien, security interest or encumbrance discharged with funds advanced by Lender regardless of whether these liens, security interests or other encumbrances have been released of record.

**25. COLLECTION COSTS.** To the extent permitted by law, Grantor agrees to pay on demand Lender's reasonable fees and costs, including, but not limited to, fees and costs of attorneys and other agents (including without limitation paralegals, clerks and consultants), whether or not such attorney or agent is an employee of Lender, which are incurred by Lender in collecting any amount due or enforcing or protecting any right or remedy under this Deed of Trust, whether or not suit is brought, including, but not limited to, all fees and costs incurred on appeal, in bankruptcy, and for post-judgment collection actions.

**26. PARTIAL RELEASE.** Lender may release its interest in a portion of the Property by executing and recording one or more partial releases without affecting its interest in the remaining portion of the Property. Nothing herein shall be deemed to obligate Lender to release any of its interest in the Property (except as required under Paragraph 35), nor shall Lender be obligated to release any part of the Property if Grantor is in default under this Deed of Trust.

**27. MODIFICATION AND WAIVER.** The modification or waiver of any of Grantor's Obligations or Lender's rights under this Deed of Trust must be contained in a writing signed by Lender. Lender may perform any of Borrower's or Grantor's Obligations, delay or fail to exercise any of its rights or accept payments from Grantor or anyone other than Grantor without causing a waiver of those Obligations or rights. A waiver on one occasion shall not constitute a waiver on any other occasion. Grantor's Obligations under this Deed of Trust shall not be affected if Lender extends, increases, amends, compromises, exchanges, fails to exercise, impairs or releases any of the Obligations belonging to any Grantor, Borrower or third party or any of its rights against any Grantor, Borrower or third party or any of the Property. Lender's failure to insist upon strict performance of any of the Obligations shall not be deemed a waiver, and Lender shall have the right at any time thereafter to insist upon strict performance.

**28. SUBSTITUTE TRUSTEE.** In case of the death, inability, refusal to act or absence of the Trustee from the state of Tennessee or in case the holder of the Obligations shall desire for any reason to remove the Trustee or any substitute trustee as trustee hereunder and to appoint a new trustee in his place and stead, the holder of the Obligations is hereby granted full power to appoint in writing a substitute trustee for said Trustee, and the substitute trustee shall, when appointed, become successor to all rights of Trustee hereunder and the same shall become vested in him for the purposes and objects of this Deed of Trust with all the power, duties and obligations herein conferred on the Trustee.

**29. SUCCESSORS AND ASSIGNS.** This Deed of Trust shall be binding upon and inure to the benefit of Grantor and Lender and their respective successors, assigns, trustees, receivers, administrators, personal representatives, legatees and devisees.

**30. NOTICES.** Except as otherwise required by law, any notice or other communication to be provided under this Deed of Trust shall be in writing and sent to the parties at the addresses described in this Deed of Trust or such other address as the parties may designate in writing from time to time. Any such notice so given and sent by first class mail, postage prepaid, shall be deemed given the earlier of three (3) days after such notice is sent or when received by the person to whom such notice is being given.

**31. SEVERABILITY.** Whenever possible, each provision of this Deed of Trust shall be interpreted so as to be effective and valid under applicable state law. If any provision of this Deed of Trust violates the law or is unenforceable, the rest of this Deed of Trust shall continue to be valid and enforceable.

**32. APPLICABLE LAW.** This Deed of Trust shall be governed by the laws of the state of Tennessee. Unless applicable law provides otherwise, Grantor consents to the jurisdiction and venue of any court selected by Lender, in its sole discretion, located in Tennessee.

**33. NO THIRD-PARTY RIGHTS.** No person is or shall be a third-party beneficiary of any provision of this Deed of Trust. All provisions of this Deed of Trust in favor of Lender are intended solely for the benefit of Lender, and no third party shall be entitled to assume or expect that Lender will waive or consent to the modification of any provision of this Deed of Trust, in Lender's sole discretion.

**34. PRESERVATION OF LIABILITY AND PRIORITY.** Without affecting the liability of Borrower, Grantor, or any guarantor of the Obligations, or any other person (except a person expressly released in writing) for the payment and performance of the Obligations, and without affecting the rights of Lender with respect to any Property not expressly released in writing, and without impairing in any way the priority of this Deed of Trust over the interest of any person acquired or first evidenced by recording subsequent to the recording of this Deed of Trust, Lender may, either before or after the maturity of the Obligations, and without notice or consent: release any person liable for payment or performance of all or any part of the Obligations; make any agreement altering the terms of payment or performance of all or any part of the Obligations; exercise or refrain from exercising or waive any right or remedy that Lender may have under this Deed of Trust; accept additional security of any kind for any of the Obligations; or release or otherwise deal with any real or personal property securing the Obligations. Any person acquiring or recording evidence of any interest of any nature in the Property shall be deemed, by acquiring such interest or recording any evidence thereof, to have consented to all or any such actions by Lender.

**35. DEFEASANCE.** Upon the payment and performance in full of all of the Obligations, Lender will execute and deliver to Grantor those documents that may be required to release this Deed of Trust of record. Grantor shall be responsible to pay any costs of recordation.

**36. CONSTRUCTION LOAN.** ☐ This Deed of Trust is a construction mortgage under the Uniform Commercial Code, to secure an obligation incurred for the construction of an improvement on land, including the acquisition costs of land. This Deed of Trust secures a construction loan, and it will be subject to the terms of a construction loan agreement between Grantor and Lender. Any materials, equipment or supplies used or intended for use in the construction, development, or operation of the Property, whether stored on or off the Property, shall also be subject to the lien of this Deed of Trust.

**37. WAIVER OF HOMESTEAD.** Grantor hereby waives all homestead exemptions in the Property to which Grantor would otherwise be entitled under any applicable law.

**38. MISCELLANEOUS.** Time is of the essence in the performance of this agreement. Grantor waives presentment, demand for payment, notice of dishonor and protest except as required by law. All references to Grantor in this Deed of Trust shall include all persons signing below. If there is more than one Grantor, their Obligations shall be joint and several. This Deed of Trust represents the complete integrated understanding between Grantor and Lender pertaining to the terms and conditions hereof.

**39. JURY TRIAL WAIVER. LENDER AND GRANTOR HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY CIVIL ACTION ARISING OUT OF, OR BASED UPON, THIS DEED OF TRUST.**

**40. ADDITIONAL TERMS:**

PAYABLE ON DEMAND OR OTHERWISE PROVIDED IN THE PROMISSORY NOTE.

Grantor acknowledges that Grantor has read, understands, and agrees to the terms and conditions of this Deed of Trust, and acknowledges receipt of an exact copy of same.

Dated this __21st__ day of __March, 2003__

GRANTOR: **JEROME SIROTE**

/s/ Jerome Sirote

GRANTOR: **JEAN SIROTE**

/s/ Jean Sirote

GRANTOR:

GRANTOR:

GRANTOR:

GRANTOR:

BK DT360 PG 804

Alabama

STATE OF ~~TENNESSEE~~ )
) ss.
COUNTY OF Limestone )

Personally appeared before me, Lisa D Williams, a Notary Public of said County and State, Jerome ~~Jackson~~ Sirote, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that (he/she) executed the within instrument for the purposes therein contained.
Witness my hand, at Office, this 21 day of March, 2003.

My Commission Expires:
MY COMMISSION EXPIRES AUGUST 16, 2006

_____
Lisa D Williams
Notary Public

STATE OF TENNESSEE )
) ss.
COUNTY OF )

Before me, _____, a Notary Public of said County and State, personally appeared _____, with who I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged _____ self to be a partner of _____, the within named bargainor, a partnership, and that _____ as such partner executed the foregoing instrument for the purposes therein contained, by signing the name of the partnership by _____ self as partner.
Witness my hand and seal, at Office in _____, this _____ day of _____, _____.
My Commission Expires: _____
Notary Public

STATE OF TENNESSEE )
) ss.
COUNTY OF )

Before me, _____, a Notary Public of said County and State, personally appeared _____, with who I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged _____ self to be _____, (or other officer authorized to execute the instrument) of _____, the within named bargainor, a corporation, and that _____ as such _____ executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by _____ self as _____.
Witness my hand and seal, at Office in _____, this _____ day of _____, _____.
My Commission Expires: _____
Notary Public

STATE OF TENNESSEE )
) ss.
COUNTY OF )

Before me, _____, a Notary Public of said County and State, personally appeared _____, with who I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged _____ self to be _____, (or other officer authorized to execute the instrument) of _____, the General Partner of _____, the within named bargainor, a partnership, and that _____ as such _____ executed the foregoing instrument for the purposes therein contained, by signing the name of the partnership by _____ self as _____ of _____, the General Partner.
Witness my hand and seal, at Office in _____, this _____ day of _____, _____.
My Commission Expires: _____
Notary Public

SCHEDULE A

SEE ATTACHED EXHIBIT "A"

SCHEDULE B

BK DT360 PG 805

LPTN611F © John H. Harland Co. (9/29/98) (800) 937-3799                                    Page 6 of 6 _____

EXHIBIT "A"
LEGAL DESCRIPTION

RE: JEROME SIROTE, ET UX

A certain tract of land lying and being in the 3rd civil District of Giles County, Tennessee and more specifically described as follows:

BEGINNING at a point in the west right of way of State Hwy. 127 said point being the SE corner of this survey and the NE corner of Robert N. Anderson property and the true point of beginning; thence with fence and the north property line of said Anderson property N 82 deg. 03 min. W 516 ft. to a fence post; thence N 22 deg. 37 min. W 58 ft. to a post on the east bank of Jenkings Creek; thence with fence crossing said creek N 49 deg. 52 min. W 34.5 ft. to west bank of said creek; thence with fence N 11 deg. 23 min. E 80 ft. to a point in fence; thence with fence N 38 deg. 19 min. E 402 ft. to fence corner; thence N 45 deg. 46 min. W 45 ft.; thence N 68 deg. 34 min. W 566 ft. to fence corner; thence with fence N 2 deg. W 790 ft. to a point; thence N 21 deg. 50 min. W 334 ft. to a point; thence N 10 deg. 14 min. W 251 ft. to a point; thence N 3 deg. 50 min. E 565 ft. to a fence corner in the south property line of Charles E. Vivian land; thence with fence and south property line of said Vivian land S 85 deg. 54 min. E 115 ft. to a fence corner; thence with fence S 3 deg. 56 min. W 718 ft. to a fence corner; thence with fence S 81 deg. 02 min. E 757 ft. to a fence corner; thence N 44 deg. 12 min. E 485 ft. to a fence corner; thence S 53 deg. 55 min. E 829 ft. to a point in the west right of way of State Hwy. No. 127 said point being the SE corner of Vivian Land and the NE corner of the survey; thence with said west right of way of highway S 23 deg. 10 min. W 190 ft. to a point in right of way; thence following highway R.O.W. S 25 deg. 35 min. W 155 ft. to a point; thence with highway S 27 deg. 25 min. W 190 ft. to a point; thence S 29 deg. W 59 ft. to a point and concrete highway right-of-way marker; thence with highway right-of-way S 61 deg. E 15 ft. to a point in said right-of-way; thence with said highway right of way S 29 deg. W 1296 ft. to the true point of beginning and containing 53.5 acres, more or less.

And being the same property acquired by Jerome Sirote, and wife, Jean Sirote by deed of record in Deed Book 251, page 423, Register's Office of Giles County, Tennessee to which reference is here made.

Map 165, Parcel 2.00

Property is subject to Water Rights of record in Deed Book 211, page 850, Register's Office of Giles County, Tennessee to which reference is here made.

Property is subject to a Right of Way Easement to Minor Hill Utility Corporation for a public water system of record in Deed Book 252, page 950, Register's Office of Giles County, Tennessee to which reference is here made.

F:\HOME\REGINA\Legal\sirote.jeromte.lleg

State of Tennessee, County of GILES
Received for record the 21 day of
APRIL 2003 at 3:45 PM. (REC#""36B25)
Recorded in official records
Book DT360 pages 800- 806
State Tax $ 112.70 Clerks Fee $ 1.00,
Recording $ 37.00, Total $ 150.70,
Register of Deeds KAY GIBBONS
Deputy Register TAMMY HELTON

BK DT360 PG 806

**RECORDATION REQUESTED BY:**
Compass Bank
Alabama Processing Center
701 South 32nd Street
Birmingham, AL 35233

**WHEN RECORDED MAIL TO:**
Compass Bank, Attn: Loan Operations
P. O. Box 10343
Birmingham, AL 35203

Document is being Recorded to correct the maturity date.

**OWNER:**
JEROME SIROTE
EMMA J SIROTE
1019 A OLD MONROVIA ROAD NW
HUNTSVILLE, AL 35806

BK/PG:DT431/590-593
06060986



This Modification of Deed of Trust prepared by:

Name: J. RODEN, ALABAMA LOAN HUB
Company: Compass Bank
Address: 701 South 32nd Street
City, State, ZIP: Birmingham, AL 35233

## MODIFICATION OF DEED OF TRUST

*0770000000000000895640940ALS0735*
07348150

**MAXIMUM PRINCIPAL INDEBTEDNESS FOR TENNESSEE RECORDING TAX PURPOSES IS $100,000.00.**

**THIS MODIFICATION OF DEED OF TRUST** dated July 19, 2006, is made and executed between between JEROME SIROTE and JEAN SIROTE; as husband and wife ("Grantor") and Compass Bank, whose address is Alabama Processing Center, 701 South 32nd Street, Birmingham, AL 35233 ("Lender").

DEED OF TRUST. Lender and Grantor have entered into a Deed of Trust dated March 21, 2003 (the "Deed of Trust") which has been recorded in GILES County, State of Tennessee, as follows:

RECORDED APRIL 21, 2003 IN THE OFFICE OF REGISTER'S OFFICE OF GILES COUNTY, TENNESSEE BOOK DT360 PAGES 800-806.

REAL PROPERTY DESCRIPTION. The Deed of Trust covers the following described real property located in GILES County, State of Tennessee:

See EXHIBIT "A", which is attached to this Modification and made a part of this Modification as if fully set forth herein.

The Real Property or its address is commonly known as 9396 BETHEL ROAD, PROSPECT, TN 38477.

MODIFICATION. Lender and Grantor hereby modify the Deed of Trust as follows:

EXTENDED THE MATURITY DATE. THE TOTAL EXISTING INDEBTEDNESS IS $100,000.00.

CONTINUING VALIDITY. Except as expressly modified above, the terms of the original Deed of Trust shall remain unchanged and in full force and effect. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Deed of Trust as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Deed of Trust (the "Note"). It is the intention of Lender to retain as liable all parties to the Deed of Trust and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification.

JURISDICTION. Except as otherwise provided, any legal action or proceeding arising out of or relating to the loan or other extension of credit secured by this instrument, or to enforce and defend any rights, remedies, or provisions contained in this instrument, (a "Proceeding") shall be instituted in the federal court for or the state court sitting in the county where Lender's office that made this loan is located. With respect to any Proceeding, brought by or against Lender, each of the other parties hereto, to the fullest extent permitted by law: (i) waives any objections that each such party may now or hereafter have based on venue and/or forum non conveniens of any Proceeding in such court; and (ii) irrevocably submits to the jurisdiction of any such court in any Proceeding. Notwithstanding anything to the contrary herein, Lender may commence legal proceedings or otherwise proceed against any other party in any other jurisdiction if determined by Lender to be necessary in order to fully enforce or exercise any right or remedy of Lender relating to this loan including without limitation realization upon collateral that secures this loan.

ERRORS AND OMISSIONS. The parties agree agrees that if deemed necessary by Lender or any agent closing the loan, change in terms, or renewal in conjunction with this Modification ("the Loan"), Lender or the agent may correct and adjust this document and any other documents executed in connection with the Loan ("Related Documents") on behalf of any other party, as if such other party were making the correction or adjustment, in order to correct clerical errors. A clerical error is information in a document that is missing or that does not reflect accurately another party's agreement with Lender at the time the document was executed. If any such clerical errors are material changes, the other party agrees to fully cooperate in correcting such errors within 30 days of the date of mailing by Lender of a request to do that. Any change in the documents after they are signed to

06060986

COMPASS BANK
P O BOX 10343
BIRMINGHAM, AL 35203

| Loan No: 89956404 | MODIFICATION OF DEED OF TRUST<br>(Continued) | Page 2 |
|---|---|---|

reflect a change in the agreement of the parties is an "alteration" or "amendment," which must be in writing and signed by the party that will be bound by the change.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF DEED OF TRUST AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF DEED OF TRUST IS DATED JULY 19, 2006.

**GRANTOR:**

X _[signature]_
JEROME SIROTE

X _[signature]_
EMMA J SIROTE

**LENDER:**

**COMPASS BANK**

X _[signature]_
Authorized Officer

---

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF _Alabama_ )
                    ) SS
COUNTY OF _Madison_ )

Personally appeared before me, _Amy L Shehan_, a Notary Public in and for said State and County, JEROME SIROTE, the within-named bargainor, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that he or she executed the foregoing instrument for the purposes therein contained.

WITNESS my hand and seal at office, on the _19th_ day of _July_, 20_06_.

MY COMMISSION EXPIRES OCTOBER 4, 2009
My Commission Expires: _____   Notary Public _[signature]_

---

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF _Alabama_ )
                    ) SS
COUNTY OF _Alabama_ )

Personally appeared before me, _Amy L Shehan_, a Notary Public in and for said State and County, EMMA J SIROTE, the within-named bargainor, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who acknowledged that he or she executed the foregoing instrument for the purposes therein contained.

WITNESS my hand and seal at office, on the _19th_ day of _July_, 20_06_.

MY COMMISSION EXPIRES OCTOBER 4, 2009
My Commission Expires: _____   Notary Public _[signature]_

| | MODIFICATION OF DEED OF TRUST | |
|---|---|---|
| Loan No: 89956404 | (Continued) | Page 3 |

## LENDER ACKNOWLEDGMENT

STATE OF __Alabama__ )
) SS
COUNTY OF __Madison__ )

Before me, __Amy L Shehan__, a Notary Public in and for the State and County aforesaid, personally appeared __Jerome + Emma Tsirote__ with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself or herself to be the _____ the within-named bargainor, a corporation, and that he or she as such _____, being duly authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself or herself as such _____.

WITNESS my hand and seal at office, on the __19th__ day of __July__, 20 __06__.

MY COMMISSION EXPIRES OCTOBER 4, 2009
My Commission Expires: _____

Notary Public: _Amy L Shehan_

[Notary Seal: AMY L. SHEHAN NOTARY PUBLIC ALABAMA STATE AT LARGE]

LASER PRO Lending, Ver. 6.29.30.101 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved.

Book DT431 Page 592

EXHIBIT "A"
LEGAL DESCRIPTION

RE: JEROME SIROTE, ET UX

A certain tract of land lying and being in the 3rd civil District of Giles County, Tennessee and more specifically described as follows:

BEGINNING at a point in the west right of way of State Hwy. 127 said point being the SE corner of this survey and the NE corner of Robert N. Anderson property and the true point of beginning; thence with fence and the north property line of said Anderson property N 82 deg. 03 min. W 516 ft. to a fence post; thence N 22 deg. 37 min. W 58 ft. to a post on the east bank of Jenkings Creek; thence with fence crossing said creek N 49 deg. 52 min. W 34.5 ft. to west bank of said creek; thence with fence N 11 deg. 23 min. E 80 ft. to a point in fence; thence with fence N 38 deg. 19 min. E 402 ft. to fence corner; thence N 45 deg. 46 min. W 45 ft.; thence N 68 deg. 34 min. W 566 ft. to fence corner; thence with fence N 2 deg. W 790 ft. to a point; thence N 21 deg. 50 min. W 334 ft. to a point; thence N 10 deg. 14 min. W 251 ft. to a point; thence N 3 deg. 50 min. E 565 ft. to a fence corner in the south property line of Charles E. Vivian land; thence with fence and south property line of said Vivian land S 85 deg. 54 min. E 115 ft. to a fence corner; thence with fence S 3 deg. 56 min. W 718 ft. to a fence corner; thence with fence S 81 deg. 02 min. E 757 ft. to a fence corner; thence N 44 deg. 12 min. E 485 ft. to a fence corner; thence S 53 deg. 55 min. E 829 ft. to a point in the west right of way of State Hwy. No. 127 said point being the SE corner of Vivian Land and the NE corner of the survey; thence with said west right of way of highway S 23 deg. 10 min. W 190 ft. to a point in right of way; thence following highway R.O.W. S 25 deg. 35 min. W 155 ft. to a point; thence with highway S 27 deg. 25 min. W 190 ft. to a point; thence S 29 deg. W 59 ft. to a point and concrete highway right-of-way marker; thence with highway right-of-way S 61 deg. E 15 ft. to a point in said right-of-way; thence with said highway right of way S 29 deg. W 1296 ft. to the true point of beginning and containing 53.5 acres, more or less.

And being the same property acquired by Jerome Sirote, and wife, Jean Sirote by deed of record in Deed Book 251, page 423, Register's Office of Giles County, Tennessee to which reference is here made.

Map 165, Parcel 2.00

Property is subject to Water Rights of record in Deed Book 211, page 850, Register's Office of Giles County, Tennessee to which reference is here made.

Property is subject to a Right of Way Easement to Minor Hill Utility Corporation for a public water system of record in Deed Book 252, page 950, Register's Office of Giles County, Tennessee to which reference is here made.